Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Good morning. We're happy to have you with us, even just visually, and we're happy to hear from counsel in our first case, a number 197650, United States versus, you're going to have to help me. I'm not sure how you say this gentleman's last name. Ms. Large. Thank you, Your Honor. I'm happy to appear today on behalf of the appellant, Mr. Spruhan. Spruhan. Okay. All right. Under the Sentencing Commission's policy statement in 1B1.10, less deserving offenders are eligible to receive reductions in their drug sentences under 3582C2, but more deserving offenders are not. The policy statement also injects unwarranted sentencing disparities into the sentencing process by undoing a district court's relative weighing of culpability between co-defendants and co-conspirators. In Mr. Spruhan's example, the district court gave him a sentence of 180 months. That was two and a half years more than one of his co-defendants. But after that co-defendant was eligible for a sentence reduction and Mr. Spruhan was not, the gap between their sentences doubled to five years. The Supreme Court in Levante held that where the commission has enacted a policy statement that conflicts with the authority Congress gave the commission by statute, the policy statement must give way to the Congress's directives. The eligibility bar in this case in 1B1.10 that prevents defendants who received non-cooperation variances and departures from their guideline range from being eligible for a later reduction conflicts with the purposes, powers, and duties of the Sentencing Commission as Congress set it out in the relevant statutes. There's two sources of conflict I want to direct the court's attention to today. The first is 1B1.10 conflicts with the purposes of the Sentencing Commission that are set out in 28 USC 991A. In that section of the code, Congress said that the Sentencing Commission can establish sentencing policies and practices that assure the meeting of the purposes of sentencing as set forth in section 3553A.2 and specifically to avoid the unwarranted sentencing disparities. Now we know that the Ninth Circuit was incorrect and the government is incorrect in this case to argue that these are merely aspirational purposes and that's clear for at least two reasons. First, because Congress separately in section 995 which sets out the powers of the Sentencing Commission specifically enumerated that the Commission had the power to quote establish general policies and promulgate such rules and regulations as are necessary to carry out the purposes of this chapter. So the specifically enumerated powers that Congress gave the Commission are directly tied to the purposes in 991A. So we've only had for an agency powers that Congress has specifically delegated. In this circumstance, they're directly linked to the purposes. But there's a second reason that we know the powers or rather the purposes in 991A are not aspirational alone. And that is because the word purposes needs to be... Yes, your honor. I assume that your view is that the Ninth Circuit's Padilla-Diaz and Hernandez-Martinez are simply incorrect. That is correct, your honor. Okay. And I'm happy to explain the two mistakes I believe the Ninth Circuit made. The first is that the Ninth Circuit held that the purposes of the Sentencing Commission in 991A were just are directly tied to those purposes. And they also didn't consider the fact that the word purposes has to be interpreted consistently across the relevant sentencing provisions, which includes both the word purposes in 991A, but also the word purposes that already appears in 3553A2. Those are both statutes enacted as part of the Sentencing Reform Act in 1984. And we know as a matter of common course that the purposes of 3553 are not just aspirational for district courts. District courts are required to follow the purposes that are set out in 3553A2. We should also expect that the Sentencing Commission is required to follow the purposes that are set out by Congress in 991. But there's another reason that I think the Ninth Circuit's decision should not be persuasive for this court. And that is because the Ninth Circuit generally held that sentence modification proceedings under 3582C2 are acts of lenity that are unmoored from the typical concerns and policies of sentencing. And while that could be true in the Ninth Circuit, it is certainly not true in this circuit under this court's precedent. And the specific precedent I would direct the court to is the Martin case, which came after the Supreme Court's decision in Chavez-Meza and held that in a sentence modification proceeding under 3582C2, a district court is required to give enough robust explanation of why it decides to give a reduction or to not give a reduction and consider the 3553 factors, including mitigation evidence a defendant presents, and that that's all relevant and required in a sentence modification proceeding. So it's not the case in this circuit that they're entirely unlinked. Ultimately, I think that the government and the Ninth Circuit and Padilla-Diaz overread the decision in Dillon to have it say something it simply did not say. Dillon was a narrow decision that determined that the Sixth Amendment right to a jury trial did not apply a sentence modification proceeding. There are, of course, many kinds of proceedings where a jury trial right doesn't exist, and this is just one of them. Dillon doesn't say anything to tell this court how to interpret the conflict between the directives of Congress on one hand and the policy statement that the Sentencing Commission enacted on another hand. Well, ma'am, the Supreme Court did say in Dillon that sentence reduction proceedings under 3582C are congressional acts of lenity intended to give prisoners the right to prove new variances at a sentence modification proceeding. But it doesn't speak to the notion of old variances that the district court already found, to the individualized determination that a district court already made. And in fact, when Dillon speaks of affirming the general principle that a district court should strive to isolate the impact of the Guideline Amendment and leave all other determinations intact, it would suggest instead that all the original determinations the district court made should be carried over, including those original variances and departures, that that's the spirit of Dillon, and that Dillon is simply talking about not having a new proceeding where a defendant has an opportunity. I'm sorry, it looks like you have a question, your honor. No, I was just going to say, but of course Dillon doesn't say that. I agree Dillon does not say that. I think that that's the spirit of what Dillon is saying, that it's directed towards new variances, not towards variances the district court has already found. I want to discuss one other area of conflict in the statutory framework that I think is relevant to this court, and it's the same statute, ultimately 994, the statute that sets out the duties of the Sentencing Commission that the Supreme Court found was problematic in Levante. And I would direct the court to 994, in the very beginning of the duties of the commission, specifically include under subsection a, promulgating and distributing both guidelines and policy statements that are that is a baseline requirement for anything the Sentencing Commission does, they must be consistent with other federal statutes. In this case, of course, the federal statute that I think causes the problem and the tension is 18 U.S.C. 3553, which sets out the requirement that sentences must avoid unwarranted sentencing disparities. So I think this is a separate area, and ultimately the government and the Ninth Circuit suggest that the later part of 994, specifically 994U, sort of overrides these other parts of the statutory framework. I'm sorry, can I interrupt you one more time? Has any court ever held that 991B applies to 3582C proceedings? That 991B, specifically that part of the purposes, your honor? No, I'm not aware of any court that has specifically, the only court I'm aware of that's physically considered the issue of whether 991B applies is the Ninth Circuit in the Padilla-Diaz and then later Hernandez case. But no, your honor, you would be the first to so find. Okay, Ms. Larch, since we would be the first to so find, how would you develop the rationale behind that? In other words, are we required to hold that 991B is a mandatory directive in order to get where you want us to go within an aspirational statement? And if so, how do you develop that rationale and an opinion? I always like to think of how we're going to write it if we're going to adopt your perspective. So how would you develop that? Of course, I would suggest that the court would develop it in this way, that it's important for agencies to know what they're bound by and what they're not bound by when Congress sets out statutes, giving them authority and giving them a role to play. So we should err on the side of assuming that when Congress says something, that's what the Congress wants the agency to do. So when Congress sets out the purposes of the very existence of the Sentencing Commission in 991A, it expects the commission to comply with those purposes in all of the things the commission does. And so because the court should rely on the language from Labonte, which looks for the plain meaning of the language in the statutes and compares that to the language of the policy statement. And when there is a conflict, then the statute has to be the one that obviously trumps the policy statement. So I would suggest that the court would find that 1B, 1.10 conflicts with those purposes and that those purposes are not just merely aspirational. And I would note that the Sentencing Commission themselves, Your Honor, does not think that they're merely aspirational. The Sentencing Commission said specifically that it was trying to avoid unwarranted sentencing disparities when it implemented the amendment to 1B, 1.10. It specifically said that in its explanation for what it was trying to do. So even the Sentencing Commission does not think that it can do whatever it likes to do. I think it would be a very clear case, and I doubt the government would even argue this case, if the Sentencing Commission had said in 1B, 1.10, when a district court goes to implement a sentence modification under 3582C2, it should affirmatively create new sentence disparities. If it said, go ahead, we want you to create disparities, and we want you to ignore the nature and circumstances of the offender, and we want you to ignore the nature and circumstances of the offense, that would be a clear conflict. I don't think anybody would argue that. Here we have the same result without the language, and this court should find that where there's a clear result, as the Ninth Circuit found in its case, that were sentences that were initially tailored to avoid unwarranted disparities and to account for individualized circumstances end up converging at the low end of the amended guideline range, but that same result is still a conflict. I did want to also, let's see, have a little bit of time left, just go back to why I think it can't be the case that 994U trumps everything else. 994U is, of course, where Congress told the Sentencing Commission that it could determine the manner and the amount of a reduction a defendant is entitled to by setting out a policy statement to govern 3582C2 proceedings, but I would suggest a relevant analogy for the court to consider from my own life, for example, is how I might delegate authority to a babysitter and say my children can have snacks, but those snacks have to be fruits and vegetables, and then if I have another policy and tell the babysitter, you can decide what time of day is snack time, you can decide how many snacks they get and how much they eat, but those policies still have to be consistent. The fact that I tell the babysitter you can decide the amount and the timing of the snacks doesn't obviate and rather supersede the prior policy that I've set into place, and here when Congress tells the Sentencing Commission you get to figure out the manner and the means of these reductions, it doesn't mean that they can ignore the prior specific delegated authority to avoid unwarranted sentencing disparities and to respect the other purposes of sentencing, so I think that they have to be read together, and I would suggest it's particularly important that this court be the one to review the policy statements that the Sentencing Commission has set into place in this instance because, of course, policy statements don't have other review. They don't go before Congress for notice and comment. Congress has no part of the role here. If the Sentencing Commission exceeds its authority, it's only the court that can say so, and so I think that it makes it particularly important to have judicial review and a reason for this court to apply Levante, a very clear precedent in this circumstance. There are questions I'll reserve the remainder of my time for rebuttal. Thank you. Thank you very much. Ms. Hudson? Thank you, Your Honor, and good afternoon. So, in response to my colleague's argument, I would just start with the plainest statement, which I think is that the government thinks that the Ninth Circuit and Padilla-Diaz and Hernandez-Martinez got this exactly right. As the court, I think, is well aware, that court had two reasons for its decisions, the first being that 991 was a general statement of the Commission's goals. It was not a specific I would point out in response to my colleague's arguments that the Levante case referenced also Stinson, an earlier Supreme Court case that made even more clear that the Commission's, sorry, that the commentary is authoritative unless it violates a Constitution or statute or is inconsistent with or a plainly erroneous reading of a guideline. And we think that Levante is clearly, for those reasons, distinguishable from the issue in this case. 991 is not a specific directive like the language that was at issue in Levante. It is not a decision in Dillon. We would argue makes that especially clear where Dillon, as Judge Motz has already pointed out, clearly stated that 3582 proceedings were congressional acts of lenity. They are limited adjustments to otherwise final sentences and I would say they are just different. Along that line, can I ask you, are there any statutory or constitutional constraints on the Commission's ability to promulgate policies relating to sentencing reduction? So, I think the provisions that we've talked about, and when I say we, I mean my colleague in her argument with the Court, certainly the foundation for this argument is 991B, which are the purposes. The government is certainly not saying that those purposes are meaningless. They are what they are. They are a statement of the purposes of the Commission and the guideposts for the Commission's to develop policies accordingly. But according to the government, there's no check on whether the Commission decides is the correct policy? Is that what you're saying? I think the check is the limitation that we've discussed in Levante, which is if there is a head-on collision, if in fact, as broad as the discretion is, if it must bow to the specific directives of Congress. So, if it is not a specific directive here, then I don't think there can be the kind of head-on collision that caused the Court to reach the ruling that it did in Levante. Levante said if the language is at odds with the statute, it must give way. And perhaps I can argue that regardless, the Commission's language, I think when you look at the reasons that the Commission stated for the amendment and for the policy statement that it was consistent with 991 regardless. So, I mean, the Commission's language, in my view, could not have been more consistent, quite frankly, with the guideposts that were set there by 991 if those, in fact, were considered to be a specific directive. When the Commission said that it had determined in the specific context of 1B1.10, a single limitation applicable to both departures and variances furthers the need to avoid unwarranted disparities and avoids litigation in individual cases, that ties directly back to 991B. They further went and said that the limitation that prohibits a reduction below the amended guideline range in such cases promotes conformity with the amended guideline range and avoids undue complexity in litigation. And then they get to the exception that they carved out for 5K defendants and said that the 5K defendants who have cooperated and noted that they are differently situated than other defendants and should be considered for a sentence below a guideline or statutory minimum, even when defendants who were otherwise similar but did not cooperate are subject to a guideline or mandatory minimum. And the final sentence underscores this point further when they said that applying this retroactive application under 3582C2 appropriately maintains this distinction and furthers the purposes of sentencing. So, in the government's view, the Commission could not have been more clearly following the guidance or purpose statement or goals, expression of goals that are contained in 991B and only if the guideline or commentary language directly conflicted with or violated the statute would we have the kind of head-on collision that the court found problematic in Levant. We just don't have it, whether it's because it's not exactly a directive or 3582 is different and is not constrained by 991B or the general sentencing policies, which is the argument that we make, or alternatively because, in fact, the Commission's language is not inconsistent with 991B. For any of those reasons, I think the government should prevail in this case. But I think that the Ninth Circuit in Padilla-Diaz did in the most straightforward manner, and I say, I guess, the only manner that we've had an opportunity to review because I do not know of any other courts either other than those out of the Ninth Circuit looking at this issue. We think the analysis from that case is the appropriate analysis in the two-prong nature of that decision, first addressing whether 991 is a specific directive, and secondly, whether 3582 is, in fact, an act of lenity and different from other sentencing proceedings. You don't have to use all your time. Well, if that is a clue, I might stop. I think I would add one thing before perhaps I stop. In response to the citation and my colleague's argument to the Martin decision, I think what I would like to say in response to that is that the fact that the court is required to give some preceding into a full or even plenary resentencing, and again, Dillon's statement that 3582 proceedings are different, that they are simply acts of lenity and allow limited reductions to otherwise final sentences, I think still carries the day and would argue against Martin having any impact on this case. Otherwise, with regard to the rest of counsel's arguments, I think we would rely on our brief. Unless there are any further questions, I'd be happy to answer. I don't think we have any. Thanks very much. Thank you. Is there a rebuttal? Yes, Your Honor. Thank you. So, I'd like to start by pointing out the tension in the government's argument. On one hand, the government asked this court to find that the purposes that are set out by Congress and 991 are not meaningless, but on the other hand, they're also not directives and they're binding. But then at the same time, while the commission did try to follow those same purposes and policies, and so we shouldn't be too concerned. So, I think it has to be one or the other, either those purposes are binding and that this court has the ability through judicial review to say that policies or guidelines that are enacted by the commission conflict with those purposes because they have some actual teeth to them or they mean nothing. And there was really no reason for Congress to write them down in the first place. But I don't think that there can be room for a middle ground. They either have to mean something or they don't. And I think that the government's suggestion that while the commission was trying to follow the purposes set out in 991B, so we shouldn't be too concerned, there's no direct conflict. That focuses on, of course, the language the commission used at the time it amended 1B.1.10, but ignores the actual impact. And the Ninth Circuit itself has discussed the impact and found that the impact is concerning, that it undoes the individualized determinations that the sentencing court makes, and that it basically takes sentences that initially avoided unwarranted disparities and undoes that tailoring court did. But that's the impact of the guideline. The commission's rationale that it stated should be understood in the terms of what the amendment was trying to do. Prior to the amendment, 1B.1.10 distinguished between defendants who had received below guideline departures and defendants who had received below guideline variances for who might be eligible to then still receive a sentence modification. And as this court is well aware, everyone confuses departures and variances. And so that produced a lot of litigation where people were trying to argue that it was a departure, not a variance, and that was confusing to district courts. And so when the sentencing commission said we're trying to make things simpler and to avoid litigation, they were getting rid of that distinction. But then they created another distinction that has produced the disparity at the heart of this case. So the sentencing commission's rationale that my colleague has need to be understood in that context. And then the actual product of the policy is what this court should find conflicts with Congress's directives. I would lastly just go back. Yes. Ms. Larch, could I ask you? It seems to me that there may be, and I'd like you to address, maybe a flaw in your argument as to at what level are we looking at the commission's statement of 5,000 feet, where it's an overall directive, a best practices goal, or are we looking at it with the level of granularity that you're suggesting that it has to conform in each and every case to the specifics of a defendant's sentence? And that seems to me to be the flaw in your argument that a broad statement has to fit every single case with the particular sentence imposed by the district court, whether the previous favorable treatment had been given, and how can that possibly be? Well, Your Honor, I think that the key thing for the court to consider in forming its opinion in this case is that this is an eligibility bar. And where we're talking about a categorical bar where people are not eligible at all to go to the district court to argue their individual circumstances, to make their case for why reduction may or may not be appropriate, that is where if it creates, not just for Mr. Screwham, but for an identified class of people, this disparity, this removal of a district court's previous individualized determinations, that is where this court should exercise its oversight and find the conflict. And it's Let me follow up if I could. And I'm very sympathetic to many respects of your argument, but what I'm struggling with is why couldn't the commission have decided that to promote consistency, people should only get really one treatment that could bring them below the amended guidelines range. And if you got that treatment in your original sentencing, or you just want to make sure that everybody gets one shot at a sentence reduction. And I know that that means that some people are going to be treated apparently less favorably on the individual level. But why couldn't they look at that from an overall basis? Everybody gets one shot. I see my time has expired. Is it all right if I answer? Yes, you can answer the question. Thank you. I think, Your Honor, the answer to that question is that the guidelines play such an important role in sentencing, which has been affirmed by the Supreme Court in the Melina Martinez decision and also the Hughes case as providing the anchor for sentencing, that it's not enough to say that you have the opportunity to argue for variances and departures once, given the anchor that the guidelines provide, even for below-guideline sentences. And in this very case, the district court did hold, in its opinion below, that the guidelines played a role in determining the sentence, in this case, the below-guideline sentence. Given that role, it's not enough to say, okay, well, you had one opportunity. Because if the guidelines have that anchoring force, which this court has consistently held that it does, and then the guidelines are shifted down, it should only be appropriate for the district court, consistent with all of the practices and purposes of sentencing, to be able to consider the lowered anchor in constructing what is an appropriate new sentence and whether or not a reduction is appropriate. Thank you. Thank you. Thank you for your argument. We will take the case under advisement. We appreciate the arguments of both counsel. Thank you.
judges: Diana Gribbon Motz, G. Steven Agee, Barbara Milano Keenan